# FRANCE v. STATE.

No. A-11549. April 30, 1952.

(244 P. 2d 341.)

R. H. Morgan, Watonga, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and James P. Garrett, Asst. Atty. Gen., for defendant in error.

POWELL, J. Jesse Dee France has appealed from a conviction of operating a motor vehicle upon a public highway while under the influence of intoxicating liquor. The jury not being able to agree on the penalty to be assessed, left the same to the court, who inflicted the punishment of a fine of $100, and 30 days' imprisonment in the county jail. Appeal has been perfected to this court.

The evidence on behalf of the state discloses that on Christmas Day, December 25, 1949, a highway patrolman, Robert Bynum, Jr., stationed at Watonga, was parked at Wheeler's Elevator, and a Mr. Vern Grizzle at whose home the patrolman and his wife had just had Christmas dinner, was sitting in the car with him. It was around 1:00 to 1:30 p. m. They observed someone drive a 1938 International pickup from Highway 33 into U. S. Highway 270. The patrolman testified that the driver ran a stop sign and made an improper turn and headed south. The driver was alone and proceeded at a speed of 25 miles per hour. The patrolman commenced to follow the driver to give him a warning ticket, but he noticed the car weave, and followed it for about half a mile to where it stopped on the slab about 15 or 20 feet south of a driveway. The patrolman drove up by the side of the pickup and put his red light on and honked his horn. The driver of the pickup backed up and then drove into the driveway, and the patrolman also backed up and turned into the driveway. The officer testified that he got out and went around to the driver's side of the truck and opened the door and that defendant was sitting behind the wheel, and that there was a strong odor of liquor. The officer asked defendant to get out, and defendant almost fell in doing so. Defendant was placed in the back seat of the patrol car and taken to jail at Watonga. The officer testified that from defendant's staggering and manner he concluded that he was drunk. He did not find any whiskey on defendant, but did not at the time search the pickup. He returned after taking defendant to jail and searched the pickup, but at that time did not find any liquor.

Witness Grizzle testified substantially as the patrolman, except he did not notice as much weaving as the patrolman.

The evidence on behalf of defendant showed that the defendant drove his pickup to the Fair Grounds Christmas morning, arriving about 8. a. m. He had

four race horses there and it was customary for him to go each morning to take care of them. The Fair Grounds caretaker, Gilbert Morrison, swore that he observed defendant from about 8. a.m., until 11 a.m. and never saw him drink, and that he smelled no liquor on him; that there were a number of other persons there, and he was watching out for drinking, as his boss had cautioned him to be watchful during the holidays.

Melvin Lambe of the Wine Glass Ranch testified that he came to the Fair Grounds about 8 a.m. Christmas Day to shoe race horses, if any needed shoeing; that he stayed their until about 12:30; saw Jesse France but if France had been drinking witness did not so discover, and he did not see defendant drink; that he noticed defendant walk his horses two at a time for two hours, and then saw him clean up the stalls and the horses. Mr. France left a little ahead of witness, driving a pickup truck.

Defendant testified that he farmed four quarter sections of land near Watonga, that he kept four horses at the Fair Grounds in Watonga, and went to the race-horse barn Christmas morning, 1949, to look after his horses. He arrived about 8 o'clock and left for his home some time after 12 noon. Witness denied having taken a drink Christmas morning after arising, but admitted that he and his wife had attended a large party at Roman Nose Park the night before and that he had done some drinking there. Defendant admitted that he had a pint of whiskey in the seat of the pickup but stated that it was unopened until he got back home, and on arriving stated that he got out of his car and stood there and opened the bottle and took a good drink and that about that time he heard someone honk a car horn and discovered the highway patrolman; that the patrolman came up and told him that he had been driving "kind of reckless" and started to give him a ticket for reckless driving, then said, "You have been drinking, haven't you?" And defendant answered, "Yes, I just got through." Defendant stated that the bottle was then in the seat, but the patrolman did not look for it at the time, and took witness to jail in Watonga.

Witness stated that the radius rod on his pickup came down that morning and was just tied up and that the front wheels did twist. He further stated that at one time he reached out to adjust a side mirror when driving back home, as he wanted to see if anyone was behind him, and that his car pulled off a little from the center of his side of the road, and another time he tried to avoid a large hole in the road and swerved his car. He stated that he did not drive over 25 miles per hour.

Bill Bohr testified that he went to defendant's home Christmas Day, 1949, for dinner. That he observed a highway patrol car drive in the yard of defendant's home around 12:30 or 1:00 p.m., and then saw defendant leave with the officer in the patrol car. That another visitor, Ray Pendergraft, looked in defendant's pickup and saw a pint of whiskey in the seat of the car and removed the same to the house, that it was nearly full but it looked like a good drink had been taken from it.

Defendant presents but one ground for reversal, and being the failure of the court to instruct the jury affirmatively concerning his theory of the defense. Of course, this court has held that it is well settled that a defendant is entitled to an affirmative instruction embracing his theory of the defense. Turpen v. State, 89 Okla. Cr. 6, 204 P. 2d 298. Here the defendant submitted a requested instruction reading:

"You are instructed that if you find and believe from the evidence that the defendant did take a drink of intoxicating liquor after he had arrived at his own premises, this alone would not constitute the guilt of the defendant of the crime

of driving a motor vehicle while under the influence, of intoxicating liquor; and in this connection you are instructed that in order to find the defendant guilty you must find and believe from the evidence that the defendant did drive said motor vehicle at the time and place as alleged by the State of Oklahoma, while he was under the influence of intoxicating liquor."

The trouble with the requested instruction is that it did not go further and at the end of the first sentence say, "but had not prior thereto on December 25, 1949, consumed intoxicating liquors."

The case-made does not reflect that the defendant excepted to the action of the trial court in refusing to give the requested instruction, and he did not except to the instructions actually given. We have examined the instructions given, and considered as a whole we find that the trial court did instruct the jury, that they must find from the evidence that defendant did commit the crime in the manner and form charged in the information, or they must acquit him. From the instructions given the jury had to find that the defendant was under the influence of intoxicating liquor during the time he was driving the pickup on U. S. Highway 270, the day and date charged.

Where there is evidence to support the theory of the defendant of a particular defense, courts should be careful to give an affirmative instruction covering such defense, as we have stated. Here there was ample evidence from the state's witnesses to support the verdict of the jury. Of course, there was ample evidence from defendant and his witnesses to have justified the jury to have acquitted defendant, if such evidence had been believed. The problem was one for the jury. The jury was unable to agree on the punishment to be assessed.

There was no evidence that the defendant had ever been in trouble before, but by his own evidence he had transported this pint of whiskey. No accident was involved, and the defendant had been driving slowly. However, if a situation had arisen requiring quick thinking and action, if defendant had been drinking as the jury found, there might have been a serious accident. The sole purpose of punishment assessed on conviction of crime is not "punishment for punishment's sake", retaliation or vengeance, but the objective is that it may act as a deterrent or cause reformation. See discussion on purpose of punishment in "The Common Law", Holmes, Lecture II, The Criminal Law; Williams v. New York, 337 U. S. 241, 248, 69 S. Ct. 1079, 93 L. 2d 1337, 1342. It is our thought that this defendant may profit by this experience. We shall afford him a chance.

Considering the case as a whole, it is the opinion of this court that the case must be affirmed, but that the jail sentence should be reduced from 30 days to 10 days, the fine to remain the same, and as so modified, the judgment and sentence is affirmed. 22 O. S. 1951 § 1066.

BRETT, P. J., and JONES, J., concur.